```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION


TINA M. SMATHERS,

         Plaintiff,

     vs.                              Civil Action 2:14-cv-500
                                      Judge Watson
                                      Magistrate Judge King

COMMISSIONER OF SOCIAL SECURITY,

         Defendant.
```

## REPORT AND RECOMMENDATION

### I. Background

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for supplemental security income. This matter is now before the Court on *Plaintiff's Statement of Errors* ("*Statement of Errors*"), Doc. No. 10, the Commissioner's *Opposition to Plaintiff's Statement of Errors* ("*Commissioner's Response*"), Doc. No. 17, and *Plaintiff's Reply*. Doc. No. 18.

Plaintiff Tina M. Smathers filed her application for benefits on May 21, 2010, alleging that she has been disabled since March 21, 2005. *PAGEID* 58, 199-202. The application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

An administrative hearing was held on October 16, 2012, at which plaintiff, represented by counsel, appeared and testified, as did Patricia Posey, who testified as a vocational expert. *PAGEID* 75. In

a decision dated January 24, 2013, the administrative law judge concluded that plaintiff was not disabled from May 21, 2010, the date her application was filed, through the date of the administrative decision.  *PAGEID* 68-69.  That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on April 3, 2014.  *PAGEID* 48-50.

Plaintiff was 40 years of age on the date of the administrative law judge's decision.  *See PAGEID* 69, 199.  She has a limited education, is able to communicate in English, and has past relevant work as a housekeeper.  *PAGEID* 66-67.  Plaintiff has not engaged in substantial gainful activity since May 21, 2010, the application date.  *PAGEID* 60.

**II. Administrative Decision**

The administrative law judge found that plaintiff's severe impairments consist of bipolar disorder, alcohol addiction, generalized anxiety disorder, and posttraumatic stress disorder.  *PAGEID* 60.  The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the residual functional capacity ("RFC") to

> perform a full range of work at all exertional levels but with the following nonexertional limitations: she can perform no more than simple, routine tasks in a work environment involving no interaction with the public and no more than occasional supervision; she must work in isolation with no more than occasional supervision.  The claimant has inability to adapt to normative work pressures.

*PAGEID* 61-63.  Although this RFC precludes the performance of plaintiff's past relevant work as a housekeeper, the administrative law judge relied on the testimony of the vocational expert to find that plaintiff is nevertheless able to perform a significant number of jobs in the national economy, including such "representative occupations . . . as a surveillance system monitor."  *PAGEID* 66-68.  The administrative law judge noted the vocational expert's testimony that there were 16,500 surveillance system monitor jobs nationally and 600 in the West Virginia and Ohio region.  *PAGEID* 67.  The administrative law judge also noted that the vocational expert "reduced the number of jobs available as a surveillance system monitor by 50%," but nevertheless found that "a significant amount of work remains in the national economy that the claimant could perform."  *PAGEID* 68.  Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from May 21, 2010, through the date of the administrative decision.  *PAGEID* 68-69.

**III. Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards.  *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).  Substantial evidence is more than a scintilla of

evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

In her *Statement of Errors*, plaintiff first argues that the administrative law judge erred in finding that plaintiff can perform a significant number of jobs in the national economy despite her severe impairments. *Statement of Errors*, pp. 8-13.

The vocational expert testified that an individual with plaintiff's vocational profile and RFC could perform the work activities of a surveillance system monitor. *PAGEID* 106-08. The vocational expert also testified that there were 16,500 such jobs in the nation and 600 in the West Virginia and Ohio region, but that

"these numbers are reduced by 50 percent" as a result of "the advent of Homeland Security" and plaintiff's limitations. *Id*. The administrative law judge relied on the testimony of the vocational expert to find that, despite her limitations, plaintiff could nevertheless perform a significant number of jobs in the national economy:

> The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as a surveillance system monitor, DOT code 379.367-010 (16,500 jobs and 600 jobs regionally). The region referred to by the vocational expert consists of West Virginia and Ohio.
>
> Although the vocational expert's testimony is inconsistent with the information contained in the Dictionary of occupational Titles, there is a reasonable explanation for the discrepancy. The vocational expert testified that due to the recent inception of the Office of Homeland Security, many of the jobs available involve interaction with others and significant workplace changes. The vocational expert additionally testified that such jobs in the Office of Homeland Security require training, making them semiskilled to skilled positions. Considering these factors and based on her experience, and education level, the vocational expert reduced the number of jobs available as a surveillance system monitor by 50% based on the claimant's inability to tolerate such work environments. Although reduced by 50%, the undersigned finds that a significant amount of work remains in the national economy that the claimant could perform, even with the limitations described in the above-defined residual functional capacity.

*PAGEID* 67-68.

Plaintiff argues that 300 jobs in the West Virginia and Ohio region and 8,250 jobs nationally is not a "significant number" of jobs. *Statement of Errors*, pp. 8-13. Plaintiff notes that the vocational expert limited plaintiff to a single job, reduced the

5

available positions for that job by 50 percent, and did not suggest that the job was representative of a larger category of jobs that plaintiff could perform. *Id*. The Commissioner does not address plaintiff's argument that the administrative law judge erred in finding that 300 jobs in the West Virginia and Ohio region and 8,250 jobs in the nation constitute a significant number of jobs. Instead, the Commissioner argues that the administrative law judge properly determined that 600 jobs regionally and 16,500 jobs nationally is a significant number of jobs. *Commissioner's Response*, pp. 4-7.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. § 416.920. The claimant bears the burden of proof through step four; once a claimant proves that she is unable to perform her past relevant work, the burden shifts to the Commissioner to show that the claimant can make adjustments to other work that exists in the national economy. *See Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009); 42 U.S.C. § 423(d).

"Work which exists in the national economy" is defined as "work which exists in significant numbers either in the region where [the

claimant] lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). "Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet with [the claimant's] physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(b). "There is no 'magic number' that qualifies as 'significant' for purposes of satisfying this prong of the disability inquiry. *Cunningham v. Astrue*, 360 F. App'x 606, 615 (6th Cir. 2010) (quoting *Hall v. Bowen,* 837 F.2d 272, 275 (6th Cir. 1988)). The determination of what constitutes a significant number of jobs is a fact-specific inquiry guided by common sense. *Hall*, 837 F.2d at 275. Many criteria are relevant to this determination, including "the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on." *Id*.

In addition to the considerations articulated in *Hall*, courts often look to what other courts have determined to be a significant number of jobs. A review of cases suggests that the number of jobs required to constitute a "significant number" depends largely on the size of the geographic region at issue. Generally speaking, as the size of the relevant geographic region increases, the number of jobs required to be considered "significant" also increases. For example,

7

the United States Court of Appeals for the Sixth Circuit has found that 125 jobs in a two-county area may be a significant number of jobs, *Stewart v. Sullivan*, 904 F.2d 708 (6th Cir. 1990), and that 1,350 jobs in a nine-county area may be a significant number of jobs. *Hall*, 837 F.2d at 275. However, these numbers may not be significant where the relevant region is the entire State of Ohio. *West v. Chater*, No. C-1-95-739, 1997 WL 764507, at *2 (S.D. Ohio Aug. 21, 1997) ("[T]he Court finds as a matter of law that 100 jobs locally, 1,200 jobs statewide and 45,000 jobs nationally do not constitute a significant number of jobs . . . ."). Another major factor that courts often consider is the number of individual jobs identified by the vocational expert that the claimant can perform. Where the vocational expert identifies several potential jobs, the Court must consider the collective number of jobs available. *See White v. Astrue*, No. 3:10-CV-375, 2011 WL 2358548, at *14 (M.D. Tenn. June 8, 2011). A court will likewise consider whether the vocational expert limited the plaintiff to the specific jobs identified or whether the jobs identified were merely representative of a larger category of jobs that the claimant could perform. *See Riser v. Comm'r of Soc. Sec.*, No. 13-11135, 2014 WL 1260127, at *20 (E.D. Mich. Mar. 26, 2014) (finding 1,000 jobs in Michigan to be a significant number where the vocational expert "hinted that there were other jobs" available to the plaintiff); *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (applying *Hall* and finding that 200 jobs in Iowa and 10,000 jobs in

8

the national economy was a significant number where the jobs identified by the vocational expert were "merely representative of a larger category of jobs that [the plaintiff] could perform").

As discussed *supra*, the Commissioner has the burden at step five to show that the claimant can make adjustments to other work that exists in the national economy. *See Rabbers*, 582 F.3d at 652.  In order to satisfy this burden, the Commissioner may provide evidence that a significant number of jobs exists in the local or national economy.  *See Geiger v. Apfel*, 229 F.3d 1151 (6th Cir. 2000) (citing *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999)).  In the case presently before the Court, there is some ambiguity as to the precise number of jobs available to plaintiff in the regional and national economies.  In response to the administrative law judge's hypothetical, the vocational expert testified as follows:

> Well there would be no jobs -- they would not -- those jobs would not be something an individual could do, but I believe an individual could carry out the work activities of a surveillance system monitor.  And the DOT code is 379.367-010.  Now these numbers are reduced by 50 percent.  Even though the DOT lists this as a unskilled occupation, in my opinion, since the advent of Homeland Security, at least 50 percent of those jobs rise to the level of semiskilled and it would be my opinion also that those jobs might involve interaction with others and some workplace change.  But in settings that I'm recommending here, I believe there would be no work change setting.  The numbers are 16,500 and regionally 600.  I don't believe I can offer anything else, Your Honor, that would meet the limitation.

*PAGEID* 107-08.  The administrative law judge cited this testimony, noted that the vocational expert "reduced the number of jobs available as a surveillance system monitor by 50%," and found that, "[a]lthough

9

reduced by 50 %, . . . a significant amount of work remains in the national economy that the claimant could perform." *PAGEID* 67-68. It is unclear from the vocational expert's testimony and the administrative law judge's decision whether plaintiff would be able to perform 600 jobs in the region consisting of West Virginia and Ohio and 16,500 jobs in the nation, or whether plaintiff would be limited to only 300 jobs regionally and 8,250 jobs nationally (*i.e.,* a 50 percent reduction in the jobs identified). Plaintiff argues for the latter interpretation of the record; the Commissioner used the former interpretation in her briefing, but failed to even acknowledge plaintiff's interpretation. Both interpretations are reasonable, and the difference may very well be significant. *See Riser*, 2014 WL 1260127 at *19 ("Courts have found that quantities greater than 8,000 jobs nationally are insignificant.") (citing cases); *Bishop v. Shalala*, 64 F.3d 662 (6th Cir. 1995) (finding 16,400 jobs in the national economy to be a significant number of jobs). Moreover, unlike the vocational evidence presented in *Jenkins v. Bowen*, 861 F.2d 1083 (8th Cir. 1988), which was cited by the Commissioner, *Commissioner's Response*, p. 5, the vocational expert in this case did not suggest that the surveillance system monitor job was representative of other jobs that plaintiff could perform. To the contrary, the vocational expert testified that plaintiff could "carry out the work activities" of only the surveillance system monitor job, and she further reduced the number of available jobs by 50 percent

10

because of plaintiff's specific limitations.  *PAGEID* 107-08.

With regard to the local economy, the Commissioner has cited several cases in which a small number of jobs in a geographic region has been found to be significant. *See Weaver v. Sec'y of Health & Human Servs.*, 34 F.3d 1069 (6th Cir. 1994) (finding 500 jobs within a 150 mile radius of the claimant's home to be a significant number of jobs); *Johnson v. Sec'y of Health & Human Servs.*, 985 F.2d 560 (6th Cir. 1993) (finding that 8,000 jobs in the lower peninsula of Michigan and 500 to 750 jobs in the greater Lansing, Michigan area, where the plaintiff lived, to be a significant number of jobs); *Stewart*, 904 F.2d at 708 (finding that 125 jobs in a "local geographical area," which was presumed to span two counties in Kentucky, to be a significant number of jobs); *Jenkins*, 861 F.2d at 1083 (finding 500 jobs in the St. Louis area to be a significant number of jobs because the plaintiff's unique skills and twenty-five years of experience as a security guard made him well-qualified to perform the sedentary security jobs described by the vocational expert).  However, the region identified in each of these cases is significantly smaller than the articulated region in this case, which the vocational expert identified as West Virginia and Ohio.  Although it is not improper to consider an entire state as the relevant region, *Pollice v. Sec'y of Health & Human Servs.*, 843 F.2d 1392 (6th Cir. 1988) ("[T]he term 'region' is flexible . . . and gives the Secretary sufficient latitude to treat an entire state as the region to be considered."), neither

11

party has cited any case in which the relevant region spanned two entire states.  Considering the size of the region identified by the vocational expert in this case, the number of jobs available to the claimant (whether 300 or 600) may not be considered significant.  *See West*, 1997 WL 764507 at *2 (finding 1,200 jobs statewide to not be a significant number of jobs); *Waters v. Sec'y of Health & Human Servs.*, 827 F. Supp. 446, 449 (W.D. Mich. 1992) (finding that 1,000 semi-skilled sedentary jobs within Michigan may not be a significant number of jobs).

Considering the size of the region identified by the vocational expert, the ambiguity as to the number of jobs available, plaintiff's limitations, and the fact that the vocational expert identified only a single job that plaintiff could perform, all discussed *supra*, the Court cannot conclude that the administrative law judge's step five finding is supported by substantial evidence.  It is accordingly **RECOMMENDED** that the decision of the Commissioner be **REVERSED** pursuant to Sentence 4 of 42 U.S.C. § 405(g) and that this action be **REMANDED** to the Commissioner of Social Security for further consideration of whether plaintiff can perform work that exists in significant numbers in the national economy.  Having concluded that this action must be remanded on this basis, the Court need not and does not address plaintiff's remaining arguments.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file

and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


January 28, 2015                              *s/Norah McCann King*
                                              Norah M$^c$Cann King
                                              United States Magistrate Judge